UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| MONA LISA RALSTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 3:18-cv-996-PPS |
| ANDREW M. SAUL,<br>Commissioner of<br>Social Security, | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

This is a Social Security benefits case in which Plaintiff Mona Lisa Ralston is appealing an Administrative Law Judge's decision denying her application for disability benefits. In her brief before me, she raises several arguments and argues primarily that the ALJ was too cursory and did not engage in enough meaningful analysis when he evaluated her symptoms. She says this resulted in the ALJ finding that Ralston had greater functional abilities than she actually possesses and that the ALJ then used that finding to say she isn't disabled. Because I agree with Ralston that the ALJ committed an error when he failed to explain why he didn't think the evidence supported Ralston's claimed symptoms, I will reverse the decision and remand this case for further proceedings.

**Background**

Mona Lisa Ralston applied for Social Security disability benefits on November

25, 2014. [A.R. [1] 18.] She claimed that as of November 25, 2013, she had become disabled and was unable to work. [*Id.*] Most of her problems occurred after a work-related accident at Kmart which left her with ongoing back pain. After her initial application was denied and then denied upon reconsideration, she requested a hearing before an ALJ. That hearing was conducted via videoconference on June 6, 2017. [*Id.*] The ALJ denied her application for benefits on November 1, 2017. [*Id.* at 15.] The eight-page written decision follows the usual format of these types of cases, primarily focusing on an evaluation of the conditions and impairments that Ralston suffers from, the severity of those conditions and impairments, and whether they are supported by enough medical evidence to render Ralston disabled. It is that written decision which is before me.

The ALJ determined that Ralston's severe impairments were degenerative disc disease, right knee joint disorder, and osteoarthritis of the hip. [A.R. 20.] Next, the ALJ reviewed those impairments to determine if they met any of the applicable Social Security Listings which would entitle her to an award of benefits. He determined that Ralston did not meet or medically equal these listings and thus proceeded to the next step of the analysis to determine Ralston's ability to perform various job-related tasks. [*Id.* at 21.]

The bulk of the written decision is focused on deciding Ralston's Residual Functional Capacity ("RFC"). As part of this determination, the ALJ's task is to review

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 11. Citations are to the page number in the lower left-hand corner of the A.R.

the entirety of the evidentiary record, including testimony, objective medical evidence, and any opinion medical evidence submitted. Then he must use this evidence to form a reasoned conclusion as to what a claimant can do despite his ailments. Here, the ALJ's conclusion was that Ralston could perform "sedentary work as define in 20 CFR 404.1567(a) except the claimant can climb ramps and stairs occasionally and never ladders, ropes or scaffolds, and can occasionally stoop and crouch and never kneel or crawl." [A.R. 21.]

Sedentary work is defined to be "work [that] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). In reaching his conclusion, the ALJ chronicled multiple years' worth of medical records and patient notes relating to Ralston's lumbar spine issues, pain and surgeries. He further referenced opinion testimony from two of Ralston's doctors, Dr. Julian Ungar-Sargon and Dr. Gregory McComis. [A.R. 24-25.] The ALJ also reviewed, but gave little weight to, the state agency consultants because their opinions "were rendered prior to the development of the full medical evidence of record" and no subsequent review was performed. [A.R. 25.] The ALJ likewise set aside (and did not consider) any medical opinion testimony rendered prior to Ralston's alleged disability onset date. [*Id.*] As discussed further below, the RFC was heavily influenced by the ALJ's decision to disbelieve Ralston's own testimony concerning her functional abilities.

With that RFC in mind, the ALJ proceeded to the next step. He found that

Ralston was unable to perform her past relevant work as a cake decorator or a home health companion. [A.R. 25.] However, relying on testimony given by a Vocational Expert, the ALJ determined that there were other jobs Ralston could perform, even if she could not perform the full range of sedentary work. [A.R. 26.] Specifically, the Vocational Expert testified that someone with Ralston's RFC could hypothetically work as an information clerk, cashier, or order clerk. [*Id.*] The ALJ adopted that conclusion and found that because those jobs were plentiful and existed in the national economy, Ralston was not disabled and denied her claim.

**Discussion**

As a starting point in evaluating the ALJ's work, I must note the limited role I play as a reviewing court. My task is not to reweigh the evidence or conduct a complete de novo review of the ALJ's entire decision. Instead, I must determine whether the ALJ's factual determinations are supported by substantial evidence and whether he applied the correct legal standards to the facts. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "[T]he decision cannot stand if it lacks evidentiary support or

an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

Ralston's first, and primary, argument is that the ALJ made an error when analyzing her testimony concerning the effects of her symptoms. The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence . . . for the reasons explained in this decision." [A.R. 24.] Ralston's argument is that the ALJ failed to do that last part, namely that the ALJ failed to explain the reasoning behind the conclusion.

After reviewing the written decision, it remains entirely unclear on what basis the ALJ reached his conclusion. Ralston testified she had limited abilities on account of her impairments and their symptoms, including pain. [A.R. 22; *id.* at 38-42 (testimony from Ralston concerning her daily life activity or lack thereof as a result of her symptoms).] Ralston testified that the most she could lift was a gallon of milk, that she couldn't operate a vacuum, that she got only approximately 3 to 4 hours of sleep at night and that her daughter had to help her shave her legs and cut her toenails, all because of her back pain. [*Id.*] The ALJ then chronicled Ralston's medical records which note continuous use of pain medication and muscle relaxers, limited functioning, complaints of back pain (primarily at night as a result of when she took her medications), as well as lumbar spine surgeries. [*Id.* at 22-24.] The ALJ spent several pages listing the ups and downs of Ralston's treatment and condition over the course of several years. But then after doing that, the ALJ concluded that this evidence is "not

entirely consistent" with Ralston's testimony. [A.R. 24.]

For starters, that is the wrong standard, and I will address that shortcoming in a moment. But, more importantly, the ALJ didn't say *why* he found Ralston's testimony so wanting. He failed to cite any evidence and instead used a blanket statement that Ralston's testimony wasn't entirely consistent with the objective medical evidence without walking through any particular inconsistency. The absence of this analysis is serious error. "[W]hen the ALJ fails to mention rejected evidence the court must send the case back, for it cannot tell whether the ALJ fulfilled his statutory duty[.]" *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1101 (E.D. Wis. 2001) (quoting *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985)).

I cannot affirm an ALJ's conclusion when they fail to explain how they arrived at it. It is not enough to simply say that the evidence conflicts with the claimant's testimony; the ALJ must show *how* it conflicts. That is just another way of saying that the ALJ must construct the proverbial "logical bridge" between the evidence and the conclusion. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) ("[T]he ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination.").

This isn't a case where harmless error can save the day for the Commissioner. Ralston notes the numerous pieces of evidence contained within the record and cited by the ALJ which actually support a finding that she is disabled, and this forecloses any notion of harmless error. Chief among that evidence was Ralston's testimony concerning the assistance she needs to perform basic daily activities. Specifically,

Ralston testified that her daughter does the household shopping and helps Ralston with her personal care. [A.R. 22.] Ralston testified she cannot bend in the shower and has difficulty getting dressed. [*Id.*] The ALJ mentioned this testimony but then failed to show how any of it was undercut by (or in the ALJ's words "not entirely consistent with") other evidence. And the medical evidence discussed by the ALJ painted a picture generally consistent with that. It doesn't use the same wording or track Ralston's testimony in its entirety, but that doesn't mean it is automatically inconsistent. The chief issue, however, is that without the analysis, there is no "logical bridge" between the evidence and the ALJ's conclusion, and thus the case must be remanded. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir.2011) ("the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record.").

As alluded to above, there is another problem with the ALJ's opinion, and that deals with the standard the ALJ used in evaluating Ralston's testimony. Ralston directs me to a series of decisions from the Northern District of Illinois which have held that an ALJ's use of a "not entirely consistent" standard to evaluate a claimant's statements concerning their impairments is itself inconsistent with the governing regulations. *See Minger v. Berryhill*, 307 F. Supp.3d 865, 872-73 (N.D. Ill. 2018); *Farley v. Berryhill*, 314 F. Supp.3d 941, 946 (N.D. Ill. 2018); *Bacolita v. Berryhill*, 2018 WL 2731227, at *4 (N.D. Ill. Jun. 7, 2018). The applicable Social Security regulations explain how ALJ's are supposed to evaluate a claimant's symptoms, including pain. "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your

symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a).

As the court in *Minger* noted, the language in the regulation is "can reasonably be accepted as consistent with the objective medical evidence" and that is different from saying symptoms are "not entirely consistent" with the evidence. *Minger*, 307 F. Supp.3d at 871. (describing 20 C.F.R. § 416.929(a) as "clearly a different, and a not as rigorous, a standard than the ALJ demanded in this case, namely that allegations be "entirely consistent" with the medical and other evidence."). Like in *Minger*, the ALJ here used a stricter standard than what is stated under the applicable regulations. This might seem like only semantics to some, but I agree with the reasoning in *Minger* that it is a substantive difference. *Id.* The regulation takes the testified-to symptoms at face value and then looks to see if they have a basis in the evidentiary record. In other words, "can reasonably accepted as consistent with" the evidentiary record. 20 C.F.R. § 416.929(a)). The standard used by the ALJ here, however, discounted and rejected Ralston's testimony because it was "not entirely consistent" with the underlying evidence. [A.R. 24.] The ALJ seemed to require complete consistency or else Ralston's testimony must be disbelieved and discounted. That's not what the regulations require. Such a process effectively rules out the claimant's testimony as evidence because of any even minor inconsistency. And again, the ALJ failed to adequately explain any such inconsistency.

Ralston's final argument is that the ALJ failed to adequately formulate her RFC. I need not address it given that the ALJ committed reversible error when he failed to

adequately explain his reasoning for discounting Ralston's testimony as insufficiently supported by the evidence. As such, Ralston should raise her issues concerning the specifics of her RFC formulation with the ALJ on remand as she sees necessary. The ALJ should ensure that any finding that Ralston can perform sedentary work, which requires an individual to sit for up to six hours per workday, *see* SSR 96-9p; 20 C.F.R. § 404.1567(a), is adequately supported by the evidence.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Plaintiff Mona Lisa Ralston's application for Social Security Disability Benefits is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

SO ORDERED on October 29, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT